The next case is United States v. Valle. Thank you, your honors. May it please the court, my name is Sarah Kunstler and I'm the attorney for Jordan Valley. Your honors, how we handle mental capacity issues for defendants in federal courts is deeply important. It speaks to who we are, not only as lawyers or as judges functioning in this system, but as a society. And in this case, and in all cases involving clients with intellectual disabilities, it is deeply troubling that we allow them to perform competence, to simply answer yes when asked if they understood complex information that is far beyond their capacity. And in Mr. Valle's case, specifically, with what we knew of his mental state before his plea and before his sentence, further investigation into his competence was necessary. When we look at this record, it is not clear, and it cannot be clear that he understood his rights when he waived them. It cannot be clear that he's competent to be before, to take a plea or to be sentenced. Now, in this case, the government, in their submission, the government heavily cites this court's ruling in United States v. Oliver, which is a 45-year-old case where this court found no abuse of discretion in a district court's denial of a competency hearing, which is based solely on a judge's personal assessment of a defendant's short, responsive answers. And I want to say that it's, that case, Your Honors, first is distinguishable because it was not solely based on the judge's assessment of the defendant's answers. It was also based on the fact that a psychologist testified at Oliver's trial that his low IQ didn't prevent him from understanding the proceedings. So this court had that to consider in finding that there was no abuse of discretion. It was kind of a post hoc ratification of the judge's assessment made before trial. You know, further, I want Your Honors to consider that since your holding in Oliver, our understanding of intellectual disability has evolved significantly. Courts now recognize, as they didn't then, that intellectually disabled individuals, for example, have a diminished responsibility compared to the average defendant. And this brings us to a critical point. I ask you, is it fair to expect cognitively disabled defendants to advocate for themselves in the high-pressure environment of a courtroom? And also, is it reasonable to ask judges untrained in psychiatry to make nuanced competency determinations based on those defendants' answers? And I submit that- What is specifically the role of the defense counsel in these proceedings? I mean, as I understand the record, and correct me if I'm misremembering it, but Mr. Valley's counsel here indicated, I can work with him. I don't have any difficulty in assisting in preparation or in comprehending the nature of the proceedings. Isn't that a really difficult fact for you to contend with? It is. Two different lawyers. Well, he did that at the outset. He also said that while he believed Mr. Valley to be competent, he acknowledged that he was impulsive and repetitive. And then finally, following Mr. Valley's plea, when he left the case, he said, I can't work with him, that his challenges are beyond my ability to work with him, right? Which is one of the factors we consider when we consider competence, right? Can this defendant work with his attorney? He left the case saying, you know, I can't work around his challenges, which is a euphemistic expression, but it kind of goes to the difficulty of a lawyer and a judge assessing his competence at all. What are these challenges? These challenges were not developed on the record. We know also that prior to his plea, his mother said, you know, he's not competent or he's not mentally able to make these decisions. So here we have the two, the two, the two... He was incompetent at that stage, but made no record beyond what he needed to be relieved of representation. I mean, it's a difficult moment for a lawyer because at that point, he's no longer advocating for his client. Not until they're relieved are they no longer advocating, right? While they're, before they're relieved, their ethical obligations are to advocate. And I think you're asking us to read that language of counsel as an assessment that he meets the test of incompetency because he wasn't able to work with his lawyer. But yet, other than that statement for the purpose of being relieved, that lawyer under ethical obligation made no record beyond that statement. That's not the extent, that's not the extent of the record in this case, though. I mean, the standard here that Your Honor's discussed in Moussaid, right, is objective doubt. And here we have that statement, we have the statements about repetitive and obsessive behaviors, we have his multiple letters to the court, which were written in, you know... I have a sixth grader, Your Honor. I know that the level of IQ that my client's been tested at puts him in an IQ range of an academic third grader, right? That letter falls far beyond anything, his letters fall far beyond anything my daughter would write. We also have his letters that... But intellectual deficiencies is not the test for competency. No, but... And don't the letters show an understanding of the charges against him, for example? Well, but the letters also show delusional thinking, right? He's, you know, his assertion that he's very smart in computers. My adversary says, well, he is very smart in computers because he set up multiple social media profiles. I don't consider that to be very smart in computers. You know, even the language, I'm very smart in computers and Homeland Security should hire me. And then, you know, if only the government would fix my iPhone and pay my AT&T bill, I could help them with their investigation. You know, this is not, this is not competent thinking. This is not, this is delusional thinking. So I think it's all of these things together. His IQ level, the letters he wrote to the court, his mother's statement, the statements made by his defense counsel, and, you know, all of these together should have given this court pause and created objective doubt that required an inquiry into his competency. You know, and, you know, you look at, you look at all of these factors and then you look at the documents and the understanding that this client, that this defendant was required to have. Here we had a 22-page plea agreement that he was required to understand and he was inquired to understand in full the rights he was giving up. You know, I go back to my child. My child is in the sixth grade, but she's off the charts in reading and comprehension. And if I gave her this document and she read it and she asked me questions and I asked her if she understood it, she would say yes. Would I be confident that she understood it? In no way. So I think, I think if you look at the plea colloquy, if you look at the documents that my client was asked to review, you know, this is, these are performances, he's performing competence despite objective indicators that he doesn't have competence. You know, you look at the, the way, you know, the way a factual basis for his plea was established. This was a situation, or just how the plea colloquy went in general. We have a client, a defendant who was asked to plead and then after he pled, the objective, the basis on which his plea was taken was, was articulated by the court. This was done through the government listing what the factors were that created the objective basis for the plea and my client being asked to say yes, right? Given all we know about this defendant, given the average defendant, fine. Maybe this is a proper proceeding. But given all we know about this defendant, there's no way this established that his plea was knowing, intelligently and voluntarily made. Thank you. Good morning and may it please the court. Joshua Rothenberg for the government. Oliver is a 45-year-old case. It is also a precedential case. And in that case, this court held that a defendant whose IQ was 68 was nonetheless not entitled to a competency hearing despite counsel requesting one because his issues had to do with his ability to communicate articulately and artfully and not his ability to understand the proceedings or the charges or his decisions. This case is quite similar. The indications, including the defendant's letters in this case, show that he understood he was facing serious federal criminal charges and that he was attempting to do his best to get a lower sentence or to avoid responsibility for what he could. He was examined in three different representation proceedings, two before the magistrate judge, one before the district judge. He addressed them in each. He also addressed the district judge throughout the colloquy during the change of plea hearing and he addressed the district court judge substantively at sentencing, giving the district court judge ample opportunity to observe him and not see a competence issue. The idea that he's delusional is incorrect. It is true that he said he was good at computers. He probably did exaggerate his skills somewhat, but this is a complicated scheme that lasted for 14 months, using, as counsel noted, multiple accounts, switching between them to try to influence these young girls. The comments about another person, your honors, we believe may refer to a real person, which would be regarding a sealed portion of the record. There's a letter at pages 228 to 233, and I would particularly note a paragraph on page 230. I'm not going to state it in open court. Even if it was not about a real person, though, the district court was well entitled to determine he was lying because he had spent 14 months lying to his victims about other people. That does not indicate that he actually believed another person was there. The cases where this court has found illusionality, for example, United States v. Ehrenberg, the defendant has suggested that he believed something that was completely irrational. In that case, for example, the defendant believed that MGM Studios was conspiring with the government to use microwaves to broadcast information about the drug trade. And the case, I should note, had to do with assaults on a federal officer. So that's not what happened here. What happened here is that... Maybe you could address the statement of his mother before the magistrate court. I mean, I understand that the lawyer stands up and says he's competent, legally competent, to understand the nature of these proceedings and assist me, but his mother is bringing to the court's attention he can't make a decision about changing counsel. He's not able to do that. Your Honor, I think it's important to remember that his mother is a lay person, and when lay people say that someone's not capable of making a decision, they often mean someone's not capable of making a good decision. She was worried that he was going to change away from the AFPD who was handling his case, who she thought was doing a good job. That is a concern that he is capable of making a decision, but will make a decision she thinks is the wrong one. The Constitution does not guarantee a defendant the right to make the right decision in every instance. It just ensures that he understands what his decision is and be able to make the decision. I will also point out that statement was made in front of the magistrate judge, and the defense is trying to sort of sew together parts of the record, some of which the district court may not have even known about, in saying that the district court had a reasonable cause to evaluate the defendant. I also will note, as Your Honor did, that there is the attorney statement later in that proceeding, which certainly would have laid any doubts, and of course the attorney does know the standard for competence, and his second attorney also did not raise a competence issue. This court has said that defense attorneys not raising the issue at all, and so by analogy certainly stating otherwise, is substantial evidence given that part of the standard is the defendant's ability to assist with his own defense. Your Honors, I do want to also address the psychiatric evaluation. In an unpublished case, United States v. Smith, we cite it in our brief, this court noted that the law does not require the district court in every instance to obtain a psychological evaluation before deciding whether there is reasonable cause to believe that the defendant is incompetent. That is certainly so here in Smith, as in Oliver, and as here, there was ample opportunity for the court to evaluate the defendant and make a decision based on the court's own observations. If the court has no further questions on competence, I would turn to some of the other issues in this case. I do want to talk about the sentencing and sentence here as well. There is no indication that there was procedural error in this case. The district court explained why it chose the sentence. Defense counsel is trying to impose an obligation for the district court to explain why it didn't select a different sentence, and this court has said that there is absolutely no reason to do that. The sentence is also substantively reasonable. This defendant exploited at least seven young girls to produce humiliating images of themselves. He received a substantial sentence for that, 30 years, but still a 20-year downward variance, in part based on his mental ability. Finally, the district court did not err in imposing a condition restricting his ability to view adult pornography. This case involved a significant fetish, which he was having these girls produce pornography of. The district court was reasonably worried that adult pornography would interfere with his rehabilitation. I'm happy to answer any further questions. Can I just, on that, because we have some cases going each way on this, the articulated reason that you just identified, if that would be true in any child porn case, what do we do with that as to whether that's a sufficient reason on the record? So that's not a problem at all, Your Honor. The defense counsel has this backwards in the government's view. What's important is that the district court look in every case and ensure that the condition is actually necessary. It may be that certain elements of certain offenses may make the condition necessary in a particular case every time someone is convicted of that offense. That does not mean that the district court can forgo the individualized explanation and not do that inquiry and ensure that it does, yes, in this case, have to matter. There is no presumption. They cannot presume it. But the fact that it's imposed in every case, that's not a reason to suppose that there's a problem. Right. I mean, it's sort of a fine edge here, but I think . . . I take that point. I guess the question is, if it is a reason that could be articulated in any case, does the fact that it was articulated in this case make it an individualized assessment? Yes, it does, Your Honor, because it indicates that the district court looked at this case and at this defendant and at his conduct specifically and ensured that that reason was present here. The fact that it could be articulated in any case . . . and by the way, Your Honor, in any case charged under this statute, the fact that it could be articulated in any case doesn't change the fact that the district court actually looked at this particular defendant and ensured his constitutional rights by ensuring that he actually needed this condition. If there are no other questions, I will just ask the court to affirm. Thank you. Thank you. Thank you, Your Honors. I just wanted to go back to something my adversary said about how the statement of my client's mother happened before the magistrate judge. These are proceedings that the district court judge acknowledged reading and considering, and the magistrate judge works under the district court judge, so we're not cobbling together different proceedings. These are all proceedings in the same case and are part of the responsibility of the district judge. I want to also speak to the district court's explanation of the sentence in this case. I want to highlight here, there was a wide range here, and this court has held that the wider the range of possible sentence, the more specificity that is required. Here, this sentence was not very specific at all. The judge highlighted the seriousness of the conduct, the manipulative conduct, and then there was one cursory sentence about how it considered his lack of criminal history, his substance abuse history, and his mental health status. That was it, and the sentence, the statement of reasons, continues this lack of explanation. The district court judge checked the wrong box. The court checked the box for the sentences within the guidelines, and the guidelines range is within a two-year period, and by checking that box, the court was not required to do a fulsome, you know, that box kind of does away with the need for a fulsome explanation on the statements of reasons, which would have been required in this case, given this was a non-guideline sentence. Now, I know the government, you know, in their paper says we're basically looking a gift horse in the mouth. This is a sentence that is 20 years below the guidelines. Yes, and what I say in response to that is that this is a 30-year sentence for a person with the mental ability of a third grader, and that what we're dealing here with is an anchoring issue. The fact the guidelines in an average case calls for a 50-year sentence for this conduct doesn't mean that that's the universe that should be considered for this client, so we're anchoring at 50 and saying, oh, he got a break at 30, you know, but this goes to the fact that the court in this case failed to see Mr. Valle or consider how his disability bore on his criminal culpability. No, the judge was like, well, 50 years is the guidelines. 30 is a significant break, perhaps for the average defendant, right, but not for Mr. Valle. This goes to both substantive and procedural reasonableness, right, and in failing, what this record shows, what the lack of reasoning in this sentence and the lack of any detail in the statements of reason shows a failure to take his disability in account and an anchoring in 50 that ends up at 30, right, and that is a failure to see Mr. Valle or consider how his disability bears on his criminal culpability. That's what this record shows, and a sentence that fails to take his intellectual disability into account and the impact of his disability on his criminal culpability is not just procedurally unreasonable, it's substantively unreasonable. Thank you. Thank you both, and we'll take the matter under advisement.